COAST–TO–COAST FINANCIAL COR-
PORATION, Coast Partners, UBH,
Inc., Plaintiffs,

Federal Deposit Insurance Corporation, as
Receiver of Superior Bank FSB, Hins-
dale, Illinois, Substituted Plaintiff,

v.

The UNITED STATES, Defendant.

No. 95–525C.

United States Court of Federal Claims.

Jan. 7, 2002.

Hugo A. Zia and William A. Gray, Counsel, Federal Deposit Insurance Corporation, Washington, D.C., for plaintiff Federal Deposit Insurance Corporation. Melvin Garbow, Washington, DC, for plaintiff Coast–to–Coast Financial Corporation.

Glenn I. Chernigoff, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, for defendant. With him on the briefs were Stuart E. Schiffer, Deputy Assistant Attorney General, David M. Cohen, Director, and Jeanne E. Davidson, Deputy Director.

## OPINION

BRUGGINK, Judge.

Pending in this *Winstar*-related[1] case is the Federal Deposit Insurance Corporation's ("FDIC's") Motion for Stay of Defendant's Counterclaim Against the Receiver Pending Exhaustion of the Administrative Claims Process. Oral argument was held on December 17, 2001. For the reasons set out below, FDIC's motion is granted.

## BACKGROUND

The Assistance Agreement at issue in this case was dated December 30, 1988. Superior Bank, FSB, Hinsdale, Illinois ("Superior"), Coast–to–Coast Financial Corporation ("CTC"), Coast Partners, and UBH, Inc. (collectively "plaintiffs"), filed this action on August 8, 1995. They amended their complaint on March 22, 1996. Defendant filed its an-

---

1. *United States v. Winstar Corp.,* 518 U.S. 839,      116 S.Ct. 2432, 135 L.Ed.2d 964 (1996).

swer and counterclaim on June 18, 1996. The counterclaim is based primarily upon an audit of the Assistance Agreement for the period April 1, 1990, through September 30, 1993.

On July 27, 2001, by Order No. 2001–56, the Office of Thrift Supervision ("OTS") appointed FDIC as receiver of Superior ("Receiver"). As receiver, FDIC succeeded to "all rights, titles, powers, and privileges of the insured depositary institution, and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution." 12 U.S.C. § 1821(d)(2)(A)(i) (2000) (hereinafter referred to as "section ___"). Also on July 27, Superior Federal Bank, FSB ("New Superior") was chartered. OTS appointed FDIC as Conservator of New Superior ("Conservator") and, in that capacity, FDIC succeeded to the same rights, powers, and privileges it assumed when it became the receiver. *Id.*

Under a Purchase and Assumption Agreement executed on July 27 by Receiver and Conservator, all claims against the United States asserted or related to those asserted in this action remained with Receiver. Consequently, on August 14, 2001, Receiver sought an order substituting it in the place of Superior. We granted the motion on August 24, 2001.

Receiver has identified people or entities that may have claims against Superior and has given notice, pursuant to sections 1821(d)(3) *et seq.*, that a receivership claim must be presented to it for consideration. If such a claim is filed, Receiver has 180 days from the date of filing to allow or disallow it. Section 1821(d)(5)(A)(i).

The counterclaim alleges that Receiver owes FDIC, in its capacity as Manager of the FRF–FSLIC (as the successor to the Federal Savings and Loan Association ("FSLIC")), funds pursuant to the Assistance Agreement between Lyons Savings Bank, FSB (Superior's predecessor in interest) and FSLIC. The counterclaim seeks judgment against Receiver in the amount of $9,302,476, plus costs, attorneys' fees, and such other relief this court deems just and proper.

On August 17, 2001, we ordered that 1) Receiver file its amended complaint on October 1, 2001; 2) defendant file its amended counterclaim by October 12, 2001; and 3) discovery on the counterclaim and the amended counterclaim end January 18, 2002.

On September 26, 2001, Dennis Trimper, Resolutions & Receiverships Specialist with the Division of Resolutions and Receiverships, FDIC, mailed to FDIC as Manager of the FRF–FSLIC a Notice To Creditor— Proof of Claim ("Notice of Claim Letter"). Receiver alleges that the Notice of Claim Letter initiates the administrative claims process and that, until the process is completed, this court cannot proceed with the litigation of the counterclaim against Receiver.

Also in September, 2001, FDIC proposed a tolling agreement that, according to Receiver, would have covered the Assistance Agreement payment claims asserted in Superior's amended complaint and would have allowed Receiver to omit those claims from its amended complaint without risking a statute of limitations defense. That proposal, according to Receiver, constituted an effort to keep the counterclaim and Superior's Assistance Agreement payment claims out of this court while the claims process was completed. Defendant declined to enter into a tolling agreement. Receiver alleges that, as a result of this refusal and in order to protect its rights under the Assistance Agreement, FDIC had to include the payment claims in the amended complaint.

Receiver asks this court to stay all proceedings relating to defendant's counterclaim vis-a-vis Receiver until the earlier of: 1) 180 days from the date of filing the administrative claim with Receiver; or 2) the time at which Receiver has disallowed the claim. In the alternative, Receiver asks for a stay of all litigation of the counterclaim.

## DISCUSSION

■ Receiver argues that defendant's claims should be stayed pending exhaustion of the statutory administrative claims process found in the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, ("FIRREA") Pub.L. 101–73, 103 Stat.

183; *see also* section 1821(d). Receiver argues that this process will afford it and the claimant, FDIC as Manager of the FSLIC Resolution Fund–FSLIC ("FRF–FSLIC"), the opportunity to resolve the counterclaim without litigation.

Section 1821(d) details the powers and duties of FDIC when it acts as conservator or receiver for a failed financial institution. Section 1821(d)(3)(A) gives it the power to determine claims brought against that institution. The receiver may, "[in its] discretion and to the extent funds are available, pay creditor claims which are allowed by the receiver." Section 1821(d)(10)(A). Section 1821(d)(5)(D)(i) permits the receiver to disallow "any portion of any claim by a creditor or claim of security, preference, or priority which is not proved to the satisfaction of the receiver."

Section 1821(d)(3)–(10) establishes a scheme for the determination, review, and payment of claims. The receiver, in any case involving the liquidation or winding up of the affairs of a failed thrift, must furnish notice to that thrift's creditors to present their claims and proof thereof to the receiver within 90 days of receiving the notice. Section 1821(d)(3)(B)(i). If the claim is timely filed, the receiver has 180 days to determine whether to allow or disallow the claim. Section 1821(d)(5)(A)(i). If the receiver disallows the claim, section 1821(d)(6)(A) mandates that the claimant has 60 days—either from the completion of the period described in section 1821(d)(5)(A)(i) or the date of any notice of disallowance of such claim pursuant to that section—to request administrative review of or file suit on the claim. If, within that time, the claimant fails to request administrative review, file suit on its claim, or continue an action commenced before the receiver's appointment, the claim will be disallowed and the claimant will forfeit its rights. Section 1821(d)(6)(B).

The motion for stay implicates the court's jurisdiction. Section 1821(d)(13)(D) states that

[e]xcept as otherwise provided in this subsection, no court shall have jurisdiction over—

(i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or

(ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

Receiver maintains that the only grants of jurisdiction otherwise provided in section 1821(d) are sections 1821(d)(6)(A) and 1821(d)(8)(C). Section 1821(d)(6)(A) states that

[b]efore the end of the 60–day period beginning on the earlier of—

(i) the end of the period described in paragraph (5)(A)(i) with respect to any claim against a depository institution for which the Corporation is receiver; or

(ii) the date of any notice of disallowance of such claim pursuant to paragraph (5)(A)(i),

the claimant may request administrative review of the claim in accordance with subparagraph (A) or (B) of paragraph (7) or file suit on such claim (or continue an action commenced before the appointment of the receiver) in the district or territorial court of the United States for the district within which the depository institution's principal place of business is located or the United States District Court for the District of Columbia (and such court shall have jurisdiction to hear such claim).

Section 1821(d)(8)(C) states that

[a]ny claimant who files a request for expedited relief shall be permitted to file a suit, or to continue a suit filed before the appointment of the receiver, seeking a determination of the claimant's rights with respect to such security interest after the earlier of—

(i) the end of the 90–day period beginning on the date of the filing of a request for expedited relief; or

(ii) the date the Corporation denies the claim.

Receiver, relying on section 1821(d)(13)(D), argues that FIRREA's administrative claims procedure is a jurisdictional prerequisite even for pre-receivership litigation. It points to the fact that no court can have jurisdiction over "any claim or action" for payment from, seeking a determination of rights with respect to, or relating to any act or omission of a failed thrift, except as otherwise provided in section 1821(d)(6)(A) and (d)(8)(C). This language, Receiver asserts, demonstrates that the jurisdictional bar covers all claims, including actions pending at the time of the appointment of the receiver. There is case support for this view. *See Intercontinental Travel Mktg., Inc. v. FDIC*, 45 F.3d 1278 (9th Cir.1994) (holding, in a pre-receivership case, that, because the plaintiff creditor failed to exhaust the requirements of section 1821(d), the district court had no jurisdiction over its action); *Resolution Trust Corp. v. Mustang Partners*, 946 F.2d 103 (10th Cir.1991) (holding that section 1821(d)'s claims procedures could not be dispensed with, even in cases where a receiver was appointed after suit was filed); *see also Henderson v. Bank of New England*, 986 F.2d 319, 320 (9th Cir. 1993) (holding, in a post-receivership case, that the district court lacked jurisdiction because FIRREA "contains no provision granting federal jurisdiction to claims filed after a receiver is appointed but before administrative exhaustion" and that "[s]ection 1821(d)(13)(D) strips all courts of jurisdiction over claims made outside the administrative procedures of section 1821."); H.R. REP. NO. 101–54(I), at 419 (1989), *reprinted in* 1989 U.S.C.C.A.N. 86, 215 ("exhaustion is a proper prerequisite to further action by a claimant ... There shall be no judicial review of the administrative determination not to allow a claim. Rather, the claimant must file suit or continue a previously filed suit to establish a disallowed claim.").

A second line of cases, however, holds that FIRREA's administrative claims procedure is not a jurisdictional bar to pre-receivership litigation; instead, it finds that the statute provides a separate scheme with respect to litigation pending at the time receivership is initiated. *See FDIC v. Lacentra Trucking, Inc.*, 157 F.3d 1292, 1301 (11th Cir.1998) (holding that FIRREA provides "two separate schemes for the disposition of pre-receivership suits and post-receivership claims," that a court retains jurisdiction over pre-receivership litigation, and that *Intercontinental* was unpersuasive because it offered no explanation for its finding that section 1821 does not create a separate scheme for pre-receivership cases); *Damiano v. FDIC*, 104 F.3d 328, 333–34 (11th Cir.1997) (because "[s]ubject matter jurisdiction is ordinarily tested as of the time of filing the complaint," a court in which a lawsuit was pending when the receiver was appointed retains its jurisdiction over the suit); *see also Carney v. Resolution Trust Corp.*, 19 F.3d 950, 955 (5th Cir.1994) ("when claims for monetary damages are brought before the RTC is appointed receiver, a court continues to have subject matter jurisdiction over those claims"); *Marquis v. FDIC*, 965 F.2d 1148, 1153 (1st Cir. 1992) ("we think that subsections (d)(5)(F)(ii), (d)(8)(E)(ii), and (d)(12) coalesce to show Congress' discernible intent to preserve jurisdiction over civil actions filed against failed institutions prior to the FDIC's appointment as receiver"); *Praxis Properties, Inc. v. Colonial Sav. Bank*, 947 F.2d 49, 63 n. 14 (3rd Cir.1991) ("The situation is slightly different, however, where a claimant files its action against a depository institution *before* the institution ... is placed in receivership. In that case, the ... the appointment of RTC as receiver would appear not to divest the federal court of jurisdiction.").

Under section 1821(d)(6)(A), appeal of a denial by FDIC of a claim is directed to district court. Accordingly, even if a district court were to dismiss a suit initially, presumably it might revisit the question at a later time. This is an action under the Tucker Act, however. If we were to dismiss altogether, the Tucker Act remedy might be jeopardized because it is far from clear that we would have jurisdiction under Title 12 to review denials of administrative claims or, even if we did, whether the available remedy would be comparable to a Tucker Act remedy.

In any event, we agree with *Lacentra* that the statutory scheme under Title 12 contemplates the continuance of previously-filed actions. As mentioned previously, section

1821(d)(8)(C) refers to "continu[ation of] a suit filed before the appointment of the receiver." We think the better course of action is to preserve the present counterclaim on the court's docket.

 The second question is whether to stay proceedings on the counterclaim, either as against FDIC only, or as against all plaintiffs. Receiver points out that, in this case, it has elected to proceed administratively on defendant's counterclaim. It notified defendant in a timely fashion, under section 1821(d)(12), of the requirement to file an administrative claim and, by its motion, seeks a stay of the proceedings related to defendant's counterclaim. FDIC, as Manager of FRF–FSLIC, has filed a claim.

Defendant argues that none of the authorities cited by Receiver require a stay. Section 1821(d), it asserts, details the administrative claims process but does not address claims pending at the time a receivership is instituted. It merely prevents parties from filing claims after the receivership is instituted. There does not appear to be controlling authority in this circuit, although defendant concedes that the court may exercise its discretion to stay the counterclaim.

We agree with Receiver that staying the counterclaim against FDIC for a limited period of time is a prudent investment. There is no question that FDIC as Receiver has the ability to address the pending administrative claim. That claim is apparently identical to the counterclaim pending here. The administrative process presumably lends itself to less formal attempts to resolve these differences, primarily posed by FDIC acting in two separate capacities. Accordingly, grant of a stay, only with respect to the counterclaim against FDIC, is in order.

## CONCLUSION

Receiver's motion for a stay is granted with respect to defendant's counterclaim against it. Accordingly, further proceedings on the government's counterclaim against FDIC are stayed until the earlier of 180 days from the date of filing of the government's claim with Receiver or the time at which Receiver has disallowed the government's claim. Defendant is directed promptly to notify the court of the conclusion of the 180 day period or of any prior action by FDIC as Receiver with respect to the claim.